**Dismissed and Plurality, Concurring, and Dissenting Opinions filed April 22, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00158-CV

---

### YUVAL LAPINER, Appellant

### V.

### JACKOB MAIMON, MAX PRIDGEON, MICHELLE R. CINNAMON-FLORES, HAIM TSUFF, GOODRICH GLOBAL LTD., ISRAMCO, INC., JEFFREY GOLDSTEIN, AND THEODORE STEINBERG, Appellees

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-34535**

---

## C O N C U R R I N G   O P I N I O N

This court lacks jurisdiction for two independent reasons, either of which alone compels the dismissal of this appeal.

The appellant, who was not a named party in the trial court below, attempts to appeal the trial court's approval of a shareholder-derivative-action settlement

and the denial of his request for payment of attorney's fees and expenses. Because the appellant was not a shareholder of the corporation at the time of the transactions of which the derivative-action plaintiffs complain, the appellant lacked standing under Delaware law to object to the derivative-action settlement, and he lacks standing to appeal the trial court's overruling of his objections and approval of the settlement. Though Delaware law applies to the issue of whether the appellant has standing to object to the settlement, Texas law applies to the issue of whether the appellees waived the appellant's lack of standing by failing to preserve error in the trial court. Under Texas law, the appellees (or this court on its own motion) may raise the appellant's lack of standing for the first time on appeal. Moreover, even if this court does not lack jurisdiction based upon the appellant's lack of standing, this court lacks jurisdiction over appellant's appeal because appellant is not a "party" who may appeal under Texas procedural rules. For both reasons, it is proper to dismiss for lack of appellate jurisdiction.

**STANDING ANALYSIS**

Appellees/plaintiffs Jeffrey Goldstein and Theodore Steinberg (collectively the "Plaintiffs") each brought a shareholder derivative suit on behalf of appellee/nominal defendant Isramco, Inc. against appellees/defendants Jackob Maimon, Max Pridgeon, Michelle R. Cinnamon-Flores, Haim Tsuff, and Goodrich Global, Ltd. (collectively the "Defendants"). In their pleadings, the Plaintiffs did not assert any individual claims on their own behalf, nor did they try to assert a class action or any claims on behalf of any Isramco shareholder. Thus, the Plaintiffs asserted only shareholder derivative claims on behalf of Isramco.

No other Isramco shareholders were named as plaintiffs, nor did any other Isramco shareholders make an appearance as a plaintiff. Other than defendants who served as officers or directors of Isramco, no Isramco shareholders were

2

named as defendants or served with process.

After two years of discovery and a mediation, the Plaintiffs and the Defendants negotiated a Stipulation of Settlement ("Settlement Agreement"). The parties to the Settlement Agreement were the Plaintiffs, on their own behalf and derivatively on behalf of Isramco, the Defendants, and nominal defendant Isramco. No Isramco shareholders other than the Plaintiffs and the Defendants were parties to the Settlement Agreement.

The Settlement Agreement provides that, upon the "Effective Date,"[1] Isramco, the Plaintiffs, and each Isramco shareholder shall be deemed to have, and by operation of the trial court's Final Order and Judgment, shall have, fully, finally, and forever released, relinquished and discharged certain claims, including various claims brought derivatively on behalf of Isramco as well as claims by each Isramco shareholder in his, her, or its individual capacity.[2]

The trial court preliminarily approved the Settlement Agreement, gave

---

[1] Under the Settlement Agreement, the "Effective Date" is defined as the first date by which certain events and conditions all have been met and have occurred. One of these events and conditions is that the trial court's Final Order and Judgment has become final by appeal. Thus, the Effective Date has not yet arrived.

[2] The Settlement Agreement provides that "[u]pon the Effective Date, Isramco, Plaintiffs (acting on their own behalf and derivatively on behalf of Isramco), and each Isramco shareholder (solely in their capacity as an Isramco shareholder) shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged the Released Claims against the Released Persons and **any and all claims (including Unknown Claims) arising out of, relating to, or in connection with, the defense, settlement or resolution of the Action against the Released Persons.**" (emphasis added). The Settlement Agreement also provides that, "[u]pon the Effective Date, Isramco, the Individual Defendants and each Isramco shareholder (solely in their capacity as an Isramco shareholder) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged **each and all of the Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims.**" (emphasis added).

notice to all of the corporation's current shareholders, and allowed them the opportunity to object to the proposed settlement. Appellant Yuval Lapiner received a notice of the proposed settlement and was the only shareholder who filed any objections to the settlement. Lapiner also filed a petition in intervention. Following a hearing, the trial court struck Lapiner's petition in intervention and overruled his objections. The trial court then signed a Final Order and Judgment (hereinafter "Judgment"), finding that the terms of the Settlement Agreement were fair, reasonable, and adequate, and approving the Settlement Agreement in all respects. Consistent with the Settlement Agreement, the Judgment provides that upon the Effective Date,[3] Isramco, the Plaintiffs, and each Isramco shareholder shall be deemed to have, and by operation of the Judgment, shall have, fully, finally, and forever released, relinquished and discharged certain claims, including various claims brought derivatively on behalf of Isramco as well as claims by each Isramco shareholder in his, her, or its individual capacity.[4] The trial court later denied Lapiner's motion for an order commanding Isramco to pay Lapiner more than $280,000 for his attorney's fees and expenses.

Lapiner now attempts to appeal, contending the trial court abused its discretion when it approved the settlement and denied his motion for attorney's fees and expenses. The Plaintiffs and the Defendants have filed motions to dismiss Lapiner's appeal for lack of appellate jurisdiction. Both assert that Lapiner failed to timely appeal because his motion for new trial did not extend the time period for perfecting appeal. The Defendants also argue Lapiner lacks standing to appeal because he lacked standing to object to the proposed settlement.

---

[3] The Judgment uses the same defined terms as are used in the Settlement Agreement.

[4] The Judgment contains language substantially similar to language from the Settlement Agreement quoted in footnote 2, above.

4

### *Lack of Standing Under Delaware Law to Challenge the Derivative-Action Settlement*

In a derivative action brought on behalf of a Delaware corporation, Delaware law applies to substantive issues, and Texas law governs procedural matters and remedies.[5] Thus, Delaware law applies to the determination of whether Lapiner had standing either to institute or maintain a derivative-action complaining of the transactions challenged by the Plaintiffs and the determination of whether he had standing to object to the derivative-action settlement.[6]

A basic principle of Delaware law is that the board of directors, rather than the shareholders, manage a corporation's business and affairs.[7] The decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation.[8] Consequently, such decisions are a part of the board of directors's responsibility.[9]

Nevertheless, under certain circumstances, a shareholder may file a derivative action, seeking to redress an alleged harm to the corporation.[10] The nature of the shareholder derivative action is two-fold.[11] First, it is the equivalent

---

[5] *See* Tex. Bus. Orgs. Code Ann. §§ 21.552, 562 (West 2014); *In re Helix Energy Solutions Group, Inc.*, No. 14-13-00238-CV, —S.W.3d—,—, 2013 WL 5470089, at *6 (Tex. App.—Houston [14th Dist.] Sept. 30, 2013, orig. proceeding); *Connolly v. Gasmire*, 257 S.W.3d 831, 839 (Tex. App.—Dallas 2008, no pet.).

[6] *See* Tex. Bus. Orgs. Code Ann. §§ 21.552, 562; *In re Helix Energy Solutions Group, Inc.*, 2013 WL 5470089, at *6; *Connolly*, 257 S.W.3d at 839.

[7] *See* Del. Code Ann. tit. 8, §141(a) (West 2014); *Connolly*, 257 S.W.3d at 839; *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990).

[8] *See Connolly*, 257 S.W.3d at 840; *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990).

[9] *See Connolly*, 257 S.W.3d at 840; *Spiegel*, 571 A.2d at 773.

[10] *See Connolly*, 257 S.W.3d at 840; *Spiegel*, 571 A.2d at 773.

[11] *See Spiegel*, 571 A.2d at 773.

of a suit by certain shareholders to compel the corporation to sue.[12] Second, it is a suit by the corporation, asserted by certain shareholders on its behalf, against those allegedly liable to the corporation.[13]  In essence, a shareholder derivative action is a challenge to a board of directors's managerial power.[14]  By its very nature, a derivative action impinges on the managerial freedom of the board of directors.[15] In fact, the Supreme Court of the United States has noted that the shareholder derivative action "could, if unrestrained, undermine the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders."[16]  Therefore, Delaware law imposes certain prerequisites on a shareholder's right to institute or maintain a derivative action on behalf of the corporation.[17]  One of these requirements is that, to institute or maintain a derivative action, a shareholder must have owned stock in the corporation at the time of the wrongdoing alleged in the derivative action.[18]  It is undisputed that Lapiner did not own any stock in Isramco at the time of the alleged wrongdoing of which the Plaintiffs complained in the derivative action; therefore, Lapiner lacked

---

[12] *See id.*

[13] *See id.*

[14] *See Connolly*, 257 S.W.3d at 840; *Spiegel*, 571 A.2d at 773.

[15] *See Spiegel*, 571 A.2d at 773.

[16] *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530, 104 S.Ct. 831, 835, 78 L.Ed.2d 645 (1984).

[17] *See Connolly*, 257 S.W.3d at 840; *Spiegel*, 571 A.2d at 773.

[18] *See* Del. Code Ann. tit. 8, §327 (West 2014); Ch. Ct. R. 23.1(a) (West 2014); *Connolly*, 257 S.W.3d at 840; *Leighton v. Lewis*, No. 471,1988, 1990 WL 84704, at *2–3 (Del. May 25, 1990) (precedential order).  Unpublished orders of the Delaware Supreme Court are precedential. *See* Del. Sup. Ct. R. 14(b)(vi)(B), 17 & cmt.; *New Castle Cnty. v. Goodman*, 461 A.2d 1012, 1013 (Del. 1983). Under Delaware law, there is also a demand requirement, but that is not at issue in this appeal. *See* Ch. Ct. R. 23.1(a) (West 2014); *Connolly*, 257 S.W.3d at 840.

standing to assert the derivative claims that were settled in this case.[19] Lapiner was not a plaintiff or a defendant in this derivative action, and, he would not have had standing to initiate or maintain a derivative action against the Defendants based upon the allegedly actionable conduct asserted by the Plaintiffs.[20]

The Delaware Supreme Court also has held that a shareholder who owns stock in the corporation at the time of the proposed settlement of a derivative action, but who did not own any stock in the corporation at the time of the alleged wrongdoing made the basis of the derivative action, lacks standing to challenge or object to the settlement of derivative claims in which other shareholders complain of this alleged wrongdoing.[21]  Therefore, under Delaware law, Lapiner lacked standing to challenge or object to the proposed settlement of the Plaintiffs' derivative claims, to seek attorney's fees and expenses for this activity, and to appeal from the trial court's judgment and order denying his request for attorney's fees and expenses.[22]

### No Waiver of Lack of Standing Under Texas Law

Lapiner and the esteemed dissenting justice argue that, even if Lapiner lacked standing under Delaware law, the Plaintiffs and the Defendants waived

---

[19] *See* Del. Code Ann. tit. 8, §327; Ch. Ct. R. 23.1(a); *Leighton*, 1990 WL 84704, at *2–3.

[20] *See* Del. Code Ann. tit. 8, §327; Ch. Ct. R. 23.1(a); *Leighton*, 1990 WL 84704, at *2–3.

[21] *See Leighton*, 1990 WL 84704, at *2–3 (dismissing current shareholder's appeal and holding that shareholder who was not plaintiff in derivative action lacked standing to challenge or object to derivative-action settlement because shareholder did not own stock when the allegedly actionable conduct occurred); *In re Beatrice Companies, Inc*., Nos. 155,156, 1987 WL 36708, at *2–3 (Del. Feb. 20, 1987) (precedential order) (dismissing current shareholder's appeal and holding that shareholder who was not plaintiff in derivative action lacked standing to challenge or object to derivative-action settlement because shareholder did not own stock when the allegedly actionable conduct occurred).

[22] *See Leighton*, 1990 WL 84704, at *2–3; *In re Beatrice Companies, Inc*., 1987 WL 36708, at *2–3.

Lapiner's lack of standing by failing to preserve error in the trial court.[23]  Under Texas law as under Delaware law, for a shareholder to have standing to institute or maintain a derivative action, the shareholder must have owned stock in the corporation at the time of the wrongdoing alleged in the derivative action.[24]  Under Texas law, lack of standing in respect of a shareholder derivative action is a component of subject-matter jurisdiction, cannot be waived, may be raised for the first time on appeal, and may be addressed by a court on its own motion.[25]  When a court determines that there is a lack of standing in respect of a shareholder derivative action, the proper procedure under Texas law is to dismiss for lack of subject-matter jurisdiction.[26]

It may be presumed for the sake of argument that, under Delaware law, Lapiner's lack of standing would be waived by a failure to preserve error in the trial court and that the Plaintiffs and the Defendants failed to preserve error in the

---

[23] As noted by the dissenting justice, the Defendants objected to Lapiner's intervention based on his failure to own Isramco stock at the time of the wrongdoing alleged in the derivative action, but the Defendants did not object to the trial court's consideration of Lapiner's objections.

[24] *See* Tex. Bus. Orgs. Code Ann. § 21.552.

[25] *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993) (stating that standing is a component of subject-matter jurisdiction and that lack of standing may be raised for the first time on appeal); *Schwartzott v. Etheridge Property Management*, 403 S.W.3d 488, 498 n.4 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that preservation of error in the trial court is not necessary as to lack of standing);  *Trojacek v. Estate of Kveton*, No. 14-07-00911-CV, 2009 WL 909591, at *3 (Tex. App.—Houston [14th Dist.] Apr. 7, 2009, no pet.) (mem. op.) (holding that lack of standing cannot be waived and may be raised for the first time by an appellate court on its own motion); *Somers v. Crane*, 295 S.W.3d 5, 8, 10, 13 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that a person's lack of standing to institute or maintain a derivative action on behalf of a Texas corporation deprives Texas courts of subject-matter jurisdiction and the proper procedure is to dismiss the derivative action for lack of subject-matter jurisdiction); *Saudi v. Brieven*, 176 S.W.3d 108, 113 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (stating that subject-matter jurisdiction cannot be conferred by consent, waiver, or estoppel at any stage of a proceeding and may be recognized by an appellate court  on its own motion or raised by a party for the first time on appeal).

[26] *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46; *Trojacek*, 2009 WL 909591, at *3; *Somers*, 295 S.W.3d at 8, 10, 13.

trial court. Even under this presumption, there would be no waiver of Lapiner's lack of standing and this court still should dismiss for lack of appellate jurisdiction because this issue is governed by Texas law rather than Delaware law.[27] Notably, in this derivative action, Texas law governs remedies and procedural matters, such as preservation-of-error requirements.[28] In the context of derivative claims that a party sought to bring on behalf of a Delaware corporation, the First Court of Appeals held that Texas law governed procedure and indicated that a party's lack of standing to assert derivative claims would result in a lack of subject-matter jurisdiction.[29] Lack of subject-matter jurisdiction is not waived by failure to preserve error in the trial court.[30] Thus, even if, under Delaware law, preservation of error is required to avoid waiver of Lapiner's lack of standing, the lack of preservation would not matter because Delaware law does not apply to this issue.[31] Under Texas law, Lapiner's lack of standing has not been waived and this court is following proper procedure by dismissing this appeal for lack of jurisdiction.[32]

Lapiner and the dissenting justice suggest that the trial court's provision of

[27] *See* Tex. Bus. Orgs. Code Ann. § 21.562; *Arkoma Basin Exploration Co. v. FMF Assoc. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008); *In re Helix Energy Solutions Group, Inc.*, 2013 WL 5470089, at *6; *Connolly*, 257 S.W.3d at 839; *Pate v. Elloway*, No. 01-03-00187-CV, 2003 WL 22682422, at *1–2 (Tex. App.—Houston [1st Dist.] Nov. 13, 2003, pet. denied) (mem. op.).

[28] *See* Tex. Bus. Orgs. Code Ann. § 21.562; *Arkoma Basin Exploration Co.*, 249 S.W.3d at 387 (holding Texas law governs the procedural matter of preservation-of-error requirements, even if another jurisdiction's law governs substantive issues); *In re Helix Energy Solutions Group, Inc.*, 2013 WL 5470089, at *6 (holding Texas law governs procedural matters); *Connolly*, 257 S.W.3d at 839 (holding Texas law governs remedies and procedural matters).

[29] *See Pate*, 2003 WL 22682422, at *1–2.

[30] *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46; *Schwartzott*, 403 S.W.3d at 498 n.4; *Trojacek*, 2009 WL 909591, at *3; *Saudi*, 176 S.W.3d at 113.

[31] *See* Tex. Bus. Orgs. Code Ann. § 21.562; *Arkoma Basin Exploration Co.*, 249 S.W.3d at 387; *In re Helix Energy Solutions Group, Inc.*, 2013 WL 5470089, at *6; *Connolly*, 257 S.W.3d at 839; *Pate*, 2003 WL 22682422, at *1–2.

[32] *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46; *Trojacek*, 2009 WL 909591, at *3; *Somers*, 295 S.W.3d at 8, 10, 13.

notice to all current Isramco shareholders, including Lapiner, and the trial court's consideration and rejection of Lapiner's objections to the settlement conferred standing on Lapiner. Jurisdiction cannot be conferred in this manner. Any such holding would be contrary to the very nature of standing as a component of subject-matter jurisdiction.[33] Neither the trial court's notice to all current shareholders nor its consideration of any objections they timely filed could confer standing on shareholders who otherwise lacked it.[34]

## APPELLATE JURISDICTION ANALYSIS BASED ON LACK OF "PARTY" STATUS UNDER TEXAS PROCEDURAL RULES

Even if Lapiner's lack of standing did not deprive this court of appellate

---

[33] *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46; *Schwartzott*, 403 S.W.3d at 498 n.4; *Trojacek*, 2009 WL 909591, at *3; *Somers*, 295 S.W.3d at 8, 10, 13; *Saudi*, 176 S.W.3d at 113. The dissenting justice states that, under *Dubai Petroleum Company v. Kazi*, the failure to establish a statutory prerequisite to suit is not a jurisdictional defect but instead goes to the right of the plaintiff to relief. *See post* at p. 10 (citing *Dubai Petroleum Company v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000)). Though the *Kazi* case is an important precedent in Texas jurisprudence, the dissenting justice overstates the scope of the *Kazi* court's holding. In *Kazi*, the Supreme Court of Texas abrogated a line of cases holding that, when a claim is based on a statute, the statutory provisions are mandatory, exclusive, and require compliance in all respects, otherwise the trial court lacks subject-matter jurisdiction. *See Dubai Petroleum Company v. Kazi*, 12 S.W.3d 71, 75–77 (Tex. 2000). Though the *Kazi* court indicated a general preference by the high court to follow the modern trend of minimizing the number of defects that deprive courts of subject-matter jurisdiction, the *Kazi* court did not state or even suggest that no failure to follow a statutory prerequisite would henceforth be a jurisdictional defect. *See Kazi*, 12 S.W.3d at 74–77. Indeed, on various occasions since it decided *Kazi*, the high court has held that a failure to follow a statutory prerequisite *is* a jurisdictional defect. *See, e.g., City of Houston v. Rhule*, 417 S.W.3d 440, 442–43 (Tex. 2013) (holding that failure to comply with statutory prerequisite deprived the courts of subject-matter jurisdiction); *In re John G. and Marie Stella Kenedy Memorial Foundation*, 315 S.W.3d 519, 522–23 (Tex. 2010) (holding that lack of justiciable interest resulted in lack of standing to pursue claim and that lack of standing deprived the trial court of jurisdiction to act); *In re Derzapf*, 219 S.W.3d 327, 331–33 (Tex. 2007) (holding that step-grandfather's suit should be dismissed because he lacked a justiciable interest and standing due to his failure to satisfy the requirements of the applicable standing statute in the Family Code); *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502-03 (Tex. 2006) (holding that application of the exclusive remedies provision in Tax Code section 42.09 deprives courts of subject-matter jurisdiction).

[34] *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46; *Schwartzott*, 403 S.W.3d at 498 n.4; *Trojacek*, 2009 WL 909591, at *3; *Somers*, 295 S.W.3d at 8, 10, 13; *Saudi*, 176 S.W.3d at 113.

jurisdiction, there is an independent basis for dismissal of this appeal. Under Texas procedural law Lapiner is not a "party" who may appeal.[35]

In *Devlin v. Scardelletti*, the Supreme Court of the United States held that a nonnamed class member who was not allowed to intervene in a class-action lawsuit had standing to appeal the trial court's approval of the class-action settlement over his objection.[36] Nonetheless, the high court held that there was a procedural issue separate from standing, namely, whether the class member was a "party" who was able to appeal the trial court's judgment.[37] The *Devlin* court held that, because the nonnamed class member was bound by the trial court's judgment, which adjudicated his claim, the nonnamed class member was a "party" who could appeal the trial court's overruling of his objections to the class-action settlement.[38]

One year later, in *City of San Benito v. Rio Grande Valley Gas Company*, the Supreme Court of Texas followed the *Devlin* court's reasoning for the purposes of Texas procedural law.[39] In that case, several nonnamed class members who did not intervene in a class-action lawsuit were not allowed to opt out of the class, and the trial court approved a settlement of the class action over the objection of these class members.[40] The Supreme Court of Texas stated that, aside from the issue of standing, to be able to appeal in Texas courts, a person must be a "party" for the

---

[35] *See, e.g.*, Tex. R. App. P. 25.1(b) (stating that "[t]he filing of a notice of appeal *by any party* invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from") (emphasis added); Tex. R. App. P. 26.1(a) (stating that "the notice of appeal must be filed within 30 days after the judgment is signed, except as follows . . . the notice of appeal must be filed within 90 days after the judgment is signed if *any party* timely files [one of various documents]") (emphasis added).

[36] *See* 536 U.S. 1, 6–7, 122 S.Ct. 2005, 2009, 152 L.Ed.2d (2002).

[37] *See Devlin*, 536 U.S. at 6–7, 122 S.Ct. at 2009.

[38] *See id.*, 536 U.S. at 6–14, 122 S.Ct. at 2009–13.

[39] *See City of San Benito v. Rio Grande Valley Gas Company*, 109 S.W.3d 750, 754 (Tex. 2003).

[40] *See id.* at 752.

11

purposes of Texas procedure.[41] The court noted that the label "party" does not indicate an absolute characteristic but rather a conclusion about the applicability of various procedural rules that may differ based on context.[42]

Under Texas procedure, generally only a named party to the suit may bring an appeal.[43] The doctrine of virtual representation is an exception to this general rule.[44] The doctrine holds that a person who is not a named party to the suit is deemed to be a party who may appeal if (1) the person is bound by the judgment; (2) the person's privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between the person and a party to the judgment.[45] The Supreme Court of Texas in *City of San Benito* stated that this virtual-representation doctrine is similar to the reasoning of the *Devlin* court and agreed with the *Devlin* court that the most important consideration in determining whether a person is deemed to be a party is whether the person is bound by the judgment from which the person seeks to appeal.[46]

*Devlin* and *City of San Benito* involved class actions and did not involve derivative actions.[47] The parties have not cited and research has not revealed a Texas case applying the virtual-representation doctrine in the context of a derivative-action settlement. The distinction is significant. While nonnamed class members who have not opted out of the class will have their own claims adjudicated by a settlement of the class action, the same cannot be said of a

---

[41] *See id.* at 754–55.

[42] *See id.* at 754.

[43] *See id.*

[44] *See id.* at 754–55.

[45] *See id.* at 755.

[46] *See id.*

[47] *See Devlin*, 536 U.S. at 3–6, 122 S.Ct. at 2007–09; *City of San Benito*, 109 S.W.3d at 752–54.

12

derivative-action settlement by which only claims owned by the corporation are adjudicated.[48]  In addition, though certain shareholders may assert a corporation's claims in a derivative action, shareholders who did not own any stock at the time of the alleged wrongdoing may not do so.[49]

Lapiner is not a named party to the suit.  The trial court struck his petition in intervention and Lapiner has not challenged the ruling on appeal. The Plaintiffs and the Defendants settled claims belonging to Isramco, not Lapiner.  In his objections to the settlement, Lapiner asserted various reasons why he thought the trial court should not approve the proposed settlement of the derivative claims asserted by the Plaintiffs.  But, these claims belong to Isramco, not to Lapiner, and Lapiner does not even have standing to assert these settled derivative claims on behalf of Isramco.[50]  Thus, to the extent the trial court overruled Lapiner's objections and approved the settlement of the derivative claims, the trial court did not adjudicate any of Lapiner's claims, nor can the trial court's judgment be said in any meaningful way to bind Lapiner.[51]

As of the Effective Date, part of the Judgment purports to effect a release, relinquishment, and discharge of certain non-derivative claims that are owned by individual Isramco shareholders, including shareholders like Lapiner, who are not named plaintiffs or named defendants in the shareholder derivative action.  Under

---

[48] *See Devlin*, 536 U.S. at 10, 122 S.Ct. at 2011; *City of San Benito*, 109 S.W.3d at 755; *Connolly*, 257 S.W.3d at 840; *Spiegel*, 571 A.2d at 773.

[49] *See* Del. Code Ann. tit. 8, §327; Ch. Ct. R. 23.1(a); *Leighton*, 1990 WL 84704, at *2–3.

[50] *See* Del. Code Ann. tit. 8, §327; Ch. Ct. R. 23.1(a); *Devlin*, 536 U.S. at 10, 122 S.Ct. at 2011; *City of San Benito*, 109 S.W.3d at 755; *Connolly*, 257 S.W.3d at 840; *Spiegel*, 571 A.2d at 773; *Leighton*, 1990 WL 84704, at *2–3.

[51] A judgment in a derivative action would preclude shareholders who did not bring the first derivative action from subsequently bringing a second derivative action on behalf of the corporation challenging the same conduct. But, Lapiner has no standing to bring such a derivative action because he did not own Isramco stock at the time of the alleged wrongdoing.

the terms of the Settlement Agreement, the trial court's signing of a judgment with this language in it was an express condition for the Settlement Agreement to become effective. (The purported result of this language in the Judgment as to individual shareholder claims is referred to hereafter as the "Purported Discharge of Shareholder Claims.") Lapiner did not object to the part of the proposed settlement and judgment involving the Purported Discharge of Shareholder Claims.[52] Therefore, even if Lapiner had standing and were a party who could appeal, this part of the settlement would not be before this court, which would review the trial court's overruling of Lapiner's objections, rather than the entire settlement and Judgment.[53]

Lapiner is not an owner of any of the claims asserted in the derivative action.

[52] The dissenting justice concludes that Lapiner, in his objections, addressed the Purported Discharge of Shareholder Claims as well as the discharge of Isramco's claims, and that Lapiner objected to what the shareholders were receiving in exchange for the discharge of all of these claims. *See post* at p. 23 & n.10. The language Lapiner used in his objections does not support this conclusion. Indeed, Lapiner never objected to the Purported Discharge of Shareholder Claims, nor did he even mention that such a purported discharge was part of the proposed settlement and judgment. In his objections, Lapiner complained that "potential damages to Isramco by the Individual Defendants' wrongful acts total at into [sic] the hundreds of millions of dollars. Yet, the Proposed Settlement simply allows the Individual Defendants to walk away from this litigation with a complete release in exchange for the damaged party, Isramco, paying Plaintiffs' counsel $1 million – paid out of Isramco's pocket no less." Lapiner made similar statements in several other parts of his objections. In a section upon which the dissenting justice relies, Lapiner argues that "[t]he Proposed Settlement provides no real benefit to Isramco in exchange for the complete release of all liability of the Defendants who have caused great harm to the Company. It also requires the Company to pay $1 million out of its own pocket, to the detriment of current shareholders, to Plaintiffs' counsel." In this language, Lapiner objects to the proposed settlement and release of Isramco's claims against the Defendants, allegedly in exchange for no real benefit to Isramco and with a payment of one million dollars to Plaintiffs' counsel. Lapiner does not object to the Purported Discharge of Shareholder Claims, and the detriment of which he complains is based on the shareholders' ownership of shares in a company that paid one million dollars for a settlement that allegedly brought no benefit to the company.

[53] *See Devlin*, 536 U.S. at 9, 122 S.Ct. at 2010 (stating that nonnamed class member would be allowed to appeal only the trial court's overruling of his objections to the class-action settlement); *City of San Benito*, 109 S.W.3d at 752 (following *Devlin* and concluding that nonnamed class members are allowed to appeal the trial court's overruling of their objections to the class-action settlement).

He is not a party in the derivative action, nor a party to the Settlement Agreement. Lapiner did not submit to the trial court's personal jurisdiction over him by filing any claims he owned as a plaintiff or claimant. Lapiner was not named as a defendant or served with process. Having not submitted himself to the personal jurisdiction of the trial court as to any of his personal claims as an Isramco shareholder, and given the complete lack of any service of process on Lapiner, the parts of the Judgment that purport to release, relinquish, and discharge any claims Lapiner owned are void.[54] And, because these parts of the Judgment are void, none of Lapiner's claims are adjudicated in the Judgment, and the Judgment does not bind Lapiner *vis-à-vis* his personal claims.[55]

For the foregoing reasons, in this context, the doctrine of virtual representation does not apply. Thus, Lapiner may not be deemed to be a party who

---

[54] *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272–75 (Tex. 2012) (concluding that a judgment violates due process, is void, and subject to collateral attack to the extent that it purports to adjudicate claims as to a person over whom personal jurisdiction has not been established, for example through failure to serve a defendant with process); *In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012) (holding that a complete failure to serve a defendant with process deprives the trial court of personal jurisdiction, violates due process, and results in a judgment that is void as to that defendant, and subject to challenge at any time); *In re Louisiana-Pacific Corp. Derivative Litigation*, 705 A.2d 238, 239–41 (Del. Ch. 1997) (holding that, in rendering judgment following the settlement of a derivative action that did not involve a class action, trial court lacked jurisdiction to render judgment that would adjudicate rights and personal claims of individual shareholders who were not parties to derivative action that was being settled); *Carlton Investments v. TLC Beatrice Int'l Holdings*, No. 13950, 1997 WL 208962, at *1–2 (Del. Ch. Ct. Apr. 21, 1997) (same as *In re Louisiana-Pacific Corp. Derivative Litigation*) (not designated for publication). Under Delaware law, unpublished chancery court opinions are precedential. *See Case Fin., Inc. v. Alden*, No. 1184-VCP, 2009 WL 2581873, at *6, n.39 (Del. Ch. Ct. Aug. 21, 2009) (not designated for publication); *Connolly*, 257 S.W.3d at 841, n.6.

[55] Neither Lapiner nor any appellee has addressed the Purported Discharge of Shareholder Claims or asked this court to consider whether this purported discharge is void. Nonetheless, whether this discharge is void is relevant to the determination of whether this court has jurisdiction, and therefore, this court can and should address this issue, even though not raised by the parties. *See M.O. Dental Lab. v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004).

may appeal.[56]

If simply owning stock in a corporation at the time of settlement made a shareholder a party who could appeal from a settlement judgment, corporations would be subject to a potential avalanche of appeals filed by shareholders who (1) are not named parties in a lawsuit in which the corporation is a party, (2) object to a settlement of that lawsuit, whether or not it is a derivative action, and (3) then attempt to be the only "party" appealing from the settlement judgment. Such a rule would increase transaction costs for corporations substantially with no apparent benefit to the corporations or their shareholders. It also would run afoul of the basic principle that the corporation's board of directors, rather than the shareholders, manage the corporation's business and affairs.[57]

Even if Lapiner's lack of standing did not deprive this court of appellate jurisdiction, this court would lack it because under Texas procedural law, Lapiner is not a "party" entitled to appeal. Therefore, this court is following the proper procedure by dismissing this appeal for lack of jurisdiction.[58]

Lapiner and the dissenting justice suggest that the trial court's provision of notice to all current Isramco shareholders, including Lapiner, and the trial court's consideration and rejection of Lapiner's objections to the settlement somehow make Lapiner a party under the virtual-representation doctrine. The trial court has no such transformative powers. The trial court's notice to Lapiner and its consideration of Lapiner's objections does not alter the reality that the Judgment adjudicated claims belonging exclusively to Isramco, an entity that Lapiner has no

---

[56] *See City of San Benito*, 109 S.W.3d at 754–55; *Tristan v. Castillo*, 2007 WL 752203, at *2 (Tex. App.—San Antonio Mar. 14, 2007 no pet.) (mem. op.).

[57] *See* Del. Code Ann. tit. 8, §141(a); *Connolly*, 257 S.W.3d at 839; *Spiegel*, 571 A.2d at 773.

[58] *See City of San Benito*, 109 S.W.3d at 754–55; *Tristan*, 2007 WL 752203, at *2.

right to manage.[59]

Lapiner is not a "party" and cannot attain "party" status under the doctrine of virtual representation. Because the Judgment does not bind or adjudicate any of Lapiner's claims, Lapiner may not be deemed to be a party who may appeal.

For the foregoing reasons, the proper course is to dismiss this appeal for lack of appellate jurisdiction, and therefore I respectfully concur in this court's judgment.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices McCally and Busby. (McCally, J., plurality) (Busby, J., dissenting).

---

[59] *See* Del. Code Ann. tit. 8, §141(a); *Connolly*, 257 S.W.3d at 839; *Spiegel*, 571 A.2d at 773.